Call the case. Case number 13-3373, South Dakota Cimino, a Special Administrator of the State of Nevada, Cimino v. Gerard Sublette. Please step up and identify yourselves. Good morning. I'm Scott Howey, H-O-W-I-E. I represent the defendant at the Lant, Dr. Gerard Sublette. Good morning, Your Honors. My name is Bert Weinstein. I represent the Cimino family. Well, I'm going to make a couple of comments before we start, because Joe Gordon would have been very unhappy with both sides here. You failed either side to really follow Supreme Court rule, and as a result, it made it very difficult for the law clerks to go through this. And when we get and are seeking more data and have to order it from you, that doesn't speak well of either side. And the most relevant thing in this whole case we got two days ago, that being the post-trial motions and the record on them. And in reality now, as Joe Gordon would say, you're like the Cubs. You came to play, but you didn't play. So I'm not going to say any more other than I'm quite surprised, because both firms here have great reputations, and this is quite unusual. But with that in mind, I just wish to say that I want you to emphasize the post-trial motions. The rest of the matter, the facts and what went on otherwise is really not too relevant. It's just the post-trial arguments that you made. I think you have to tell us why this is or isn't intertwined or why it was not a conflict decision. If I might, Your Honor, the post-trial motions and all the post-trial briefing had been included in the supporting record that we filed in conjunction with the petition for leave to appeal. Not in anything we got. It was my understanding that that... We got nothing. Your Honor, just to add to Mr. Howey's comment, the case came up here on a PLA. And with the PLA, Mr. Howey filed a supporting record, and then he filed a supplemental record. I personally am confused between which is the supplemental record and which is the supporting record. But needless to say, I am confident that all of the materials are contained in one or the other. No, I'm just saying that makes it very difficult for the people working on this case before we even see it. And I certainly, we certainly appreciate that, Your Honor. It was our understanding that the supporting record would be part of what this Court would be provided. And that's why the Rule 306 provides for a supplemental record. Right. In addition to those materials. Until we got this. We did not know much about what happened in this post-trial motion. And I appreciate that, Your Honor. It's the case also that until we received the order from the Court approximately a week ago, we were not aware that there was anything the Court was missing. So we certainly apologize for any role that we might have had in that. But it was our understanding that the Court had... Well, I want to just add something. Since he was using the royal we, I think he was also including me in this. And both of us in our opening briefs... No, as I said, I know both of you are decent law firms. That's why we're just very surprised. But it's here nor there. I want you to proceed. But emphasize the post-trial portion because that's really what's relevant as to what Hogan decided and how he got there and what you argued. And that's what we want to hear about. I have a different point of view, but that's not unusual for me, Your Honor. Thank you. So we usually may or may not ask a lot of questions. If we do, then we give you extra time. Otherwise, it's the normal time span. Another thing is that Mr. Howey did not try the case. The lawyer who was on trial in the case has left their firm. I wasn't on trial in the case. I'm much more comfortable in front of a jury. You guys intimidate me. And I found it the other way around. May it please the Court. I am Scott Howey, and I represent the defendant, Appelant, in this matter, Dr. Gerard Soblat. That is to say, he is my client. But in another sense, I also represent a group of people not before this Court and not with any formal counsel, and that's the jury. Twelve good men and women who saw the witnesses testify, heard the instructions about the elements of the plaintiff's case, deliberated over the evidence, and returned a unanimous verdict, nominally in favor of the plaintiff but awarding no damages. And what's at issue here is whether those features of the jury's verdict, Verdict Form A, can be reconciled. The trial judge erred when he concluded that they could not be in the mistaken belief that a jury cannot return that verdict form unless it also awards damages. But the Supreme Court rejected that proposition nearly half a century ago, recognizing that a jury verdict against a defendant that awards zero damages is an acceptable way of expressing a verdict in favor of the defendant on the issue of proximate cause. And by failing to construe it in that way, the trial judge failed to give the jury's verdict the deference it deserved. Because the jury's verdict here can be construed in a manner that both the law and the evidence support, the trial judge abused his discretion in ordering a new trial, and that order should be reversed. And how, you're basically saying that they didn't establish proximate cause then? We're saying that the jury could have viewed it that way. There certainly is no dispute in this case that the evidence permitted the jury to reach that conclusion. Now, we can't know specifically what the jury did find. But we do know that the evidence permitted it to You just said you don't know what they did find. There was no special interrogatory. Right. Your Honor. And so You or one of you talked in the Simon case. I beg your pardon? One of you referenced the Simon case. I don't recall if that was us who referenced that. But the absence of a special interrogatory means that there isn't a way of testing the jury's verdict to determine what exactly the precise basis for it was. It can be interpreted, though, as several courts of this state have held, that a verdict that purports to be for the plaintiff but awards no damages is interpretable as a verdict in favor of the defendant as to the issue of proximate cause. That's a decision that the Supreme Court issued as far back as 1968 in Flynn v. Vancell, where it rejected the idea that a verdict in favor of the plaintiff is necessarily a finding that proximate cause has been proved. And the Fourth District echoed that reasoning in the Kleist case that we have in our briefs regarding a judgment in favor of the plaintiff and against the defendant, and yet finding that defendant not liable for any damages. And the Fourth District echoed the Flynn case from almost 30 years earlier in finding that when the jury returns a verdict in that form, using verdict form like the verdict form A here, finding liability, I'm sorry, finding negligence but not finding any damages, that is an acceptable way of concluding and expressing the conclusion that the plaintiff has failed to prove proximate cause. I don't think the Kleist case can be distinguished by the fact that they had the option of not finding all damages for every party. In other words, they found for some and not for others. And also they were asked the question if they had to find everybody negligent, did they have to award damages? And they indicated no. I mean, is that not a distinction from the Tesdill and the other few cases that go the other way? Those are not distinguishing factors that make a difference to this case. Those are additional support for a conclusion that the court was already headed toward in the Kleist case. The relevant fact is that the jury did find against that defendant, did find, returned a verdict form that spoke against that defendant. It is true there were other defendants in that case who were the subjects of findings of damages and were held to be responsible, liable for damages. Proximate cause evidently was proved against those defendants. But the Fourth District concluded that the lack of a damages award as against one of the defendants was not inconsistent as to that defendant. And its finding in that regard is limited to that defendant. It regarded the conclusion of the jury in that case as something that could be construed as a finding that the damages suffered by the plaintiff were not proximately caused by negligence that had been found as to that defendant. And that's precisely the case that we have here. We have a verdict that can certainly be interpreted more than one way. And the flaw in the trial court's reasoning in this case is that his principal error was to conclude that the jury's verdict was internally irreconcilable, despite the reasonable hypothesis that could explain it as being a finding in favor of the defense on proximate cause, especially because that explanation is one that the Supreme Court endorsed in Flynn. And this Court itself has endorsed since then. Did you cite Flynn? We did, Your Honor. It's cited as one of the cases I believe that Kleist relied upon. But it is there. And there are other cases that rely on it as well, such as I believe this Court relied upon it in Chrysler as one of the cases in which it found that an award of damages is not necessary even when those damages are proved and even when the defendant's negligence is established. The connection to proximate cause is still necessary. And even if there are proven damages and established negligence, there is still a basis for a finding in favor of the defendant if the proximate cause has not been established. There are – and Kleist is – So Flynn was a proximate cause case? I believe Flynn did involve – I mean, Kleist was. I acknowledge Kleist was a proximate cause case. They tried to reconcile the verdict for the plaintiff and no damages as proximate cause in favor of the defendant. Is that what Flynn did? I believe Flynn did that, yes. That was the case in which a two-week-old infant had been – was killed in a car accident. There was an issue of whether there was a presumption as to loss of – or pecuniary loss as a result of that death. And the Supreme Court held that there was not and that it was not inconsistent for a jury to return a verdict without a finding as to that damages element, even despite a presumption in that case. Well, we have even more than a presumption of damages in this case. We have stipulated damages in this case. We have funeral costs and medical costs that were, beyond any dispute, proven damages in this case, right? But even as there was a proven – proof that damages occurred, that an injury was suffered, it's still a staple of tort law that those damages are not the legal to a finding of negligence. Oh, sure. But isn't the real problem in this case is we don't know what the jury meant by that. That's the problem. We don't know what – we don't know whether they said no proximate cause or whether they simply made a mistake. We don't know. We can't know what they found and what they thought. But what we do – what we can know is what they could have found. It is – Could have. That's – that's a conclusion.  That's not a – But we don't second-guess the trial judge here. Not at all. We have to – we give him deference. He heard the whole thing. He sat there. And we can only reverse him if we found no reasonable person would rule the way he did. But the judge – How would you tell us? How would we write this up? No reasonable person would do what Judge Hogan did. I'm glad you asked that, Your Honor, because what the – although we are constrained by what the judge did, the judge is constrained by what the jury could have done. And Illinois law has a long history of seeking to interpret jury verdicts in a way that are internally consistent, if at all possible. If, as this Court put it in Tedeschi, if any reasonable hypothesis can support the verdict. So the judge certainly has discretion to determine if a verdict cannot be reconciled internally or cannot be reconciled with the evidence. That is within the judge's discretion. But the judge abuses his discretion if there is more than one reasonable hypothesis and one of those reasonable hypotheses is consistent with what the jury has done. In this case, there isn't any dispute that the jury had within its power the ability to return a verdict in favor of the defense on proximate cause. Proximate cause was a hotly disputed issue as to whether the defendant had caused the decedent to die based upon what he did or did not do. Or, on the other hand, if it was the decedent's own preexisting conditions that caused her demise. So the jury could have returned a verdict either way based upon what the evidence was. In this case, there is law going back at least as far as Clice and arguably as far back as 1968 in Flynn that says that if a verdict can be interpreted that way, if it can be interpreted as finding for the defendant on proximate cause, even though it purports to state for the plaintiff, then it should be interpreted that way. And that is where the judge abuses his discretion. This is not a situation where the judge is charged with determining what the jury should have done or finding that its verdict was wrong because it should have done something else. It's not a should that the judge ought to be concerned with. It's a could. It's what was permissible within the evidence. And as I've said, I don't think that Mr. Weinstein will dispute me on this. There was evidence enough to enable the jury to return a verdict for the defense on proximate cause. Now, certainly that was a hotly contested issue. Certainly he argued that it should have returned a verdict for the plaintiff on proximate cause. But it was a hotly contested issue. And it was an issue on which there was evidence to enable the jury to find for the defense. Given that the jury could have found for the defense based on what the evidence was on the issue of proximate cause, it was an abuse of discretion for the trial judge to conclude that the jury could not have returned a verdict on proximate cause. But, Counsel, do you think it's equally likely? If we were to engage in probabilities, I'm not saying that we should, but if we were, what is the most likely thing? What's the most likely alternative to your scenario? So one scenario is they meant to say we don't think these injuries were proximately caused, but they pulled the wrong verdict for them. They ignored the jury instruction that said if you do not find proximate cause, you should not even get to damages. They made both of those mistakes. That's your theory, in that what they meant to do was do a defense verdict. But isn't it just as possible that, as Justice House said, that it was some confusion as to what they were supposed to do? Or, as in I think the Theofanis case, there maybe was just a compromise between the jurors who were debating this. I mean, any of these things could equally have happened, right? Even if it's conceivable that other things were possible. It's not inconceivable that the jury meant to do exactly what it did. So you think the trial judge under the law has a duty, if he can find a reasonable hypothesis, even if that reasonable hypothesis includes the fact that the jurors made serious errors in following the jury instructions, that he should embrace that hypothesis and uphold the verdict? Yes. In fact, that's what Kleist holds. Kleist specifically said that it is more logical that the jury meant to return a verdict in favor of the defendant on proximate cause than that it didn't understand what it was supposed to do and returned a verdict that was internally inconsistent. Kleist specifically rejected what he called overly legalistic reasoning, or unrealistic, and I've forgotten the exact words the Court used, but it criticized the notion that by returning a verdict nominally in favor of the plaintiff, the jury must have intended to find both duty, breach, and proximate cause. It found it more logical, its words, more logical, to say that the jury intended to return a verdict in favor of the defense. So what do you make of Theofanis and Tyndall? Should we find them to be wrongly decided, or do you? Theofanis in particular is a case in which, which is distinguishable from this one, because in that case there was no dispute as to proximate cause. The issue there, it couldn't have been, there couldn't have been a situation where the jury decided that proximate cause hadn't been proved. If I'm remembering it correctly, that's the distinguishing factor there. And certainly there are going to be cases in which a verdict form like this might be inexplicable based upon what the evidence is. If proximate cause, for instance, is in dispute or, I'm sorry, if it is not in dispute, if it's been conceded, then clearly the jury would not be able to find against it. And then it's not hard to imagine a case like that where the principle, perhaps the only disputed issue, might be whether the undisputed acts of the defendant were or were not a breach of the standard of care. So if that had been the case here, for instance, then a finding, the jury's finding could not be reconciled with itself because there wouldn't be any way to say, well, this jury found in favor of the defense on proximate cause. There might be other situations where liability is conceded but damages are the only thing at issue. But in this case where proximate cause was so much in dispute, that makes this, that puts this case, it's distinguishable from Theofanis and Tyndell. Why do you say it was such disputed other than the post-trial motions? In reading all the facts, I disagree with you totally. I did not find only one doctor, that being, I think his name was Goldstein or Goldberg, whoever he was, he's the only doctor that testified, including the doctor who allegedly did the colonoscopy. He himself admitted that had he known, and I don't understand this, you take all of them, none of them other than one was willing to give to a reasonable degree of medical certainty. The others all hedged their bets. And in addition to hedging their bets, it came down to two things, cancer or diverticulitis. And the interesting question there is, would any of them have done what they, what was done, had they stopped and thought, this is an 80-some year old woman, you don't do surgery on cancer of an 80-some year old woman. So the only thing left logically was diverticulitis. So when you say proximate cause, it was there all along. The jury may not have clearly seen it, but it was clearly there. And I can't imagine they didn't see it. And I think that maybe basically the only error in this case was the testimony about the medical and the funeral expenses. They said they were paid. Well, somebody should have qualified that by saying they were paid by the estate. And that would have been the end of it. We wouldn't be here with this case. But that wasn't done. So your argument on proximate cause, as far as I'm concerned, is way out there. Well, Dr. Villasusa's testimony, Your Honor, was that it wasn't possible to tell when perforation had occurred. Oh, it's clear in the record. There was no error. No error in the person internally. Let's put it this way. I wish I could argue this case for the plaintiff. And I wish I could argue the post-trial motions, because there's no way that there isn't proximate cause. And the only person that might have been the alternative, which would give you some semblance, is the guy that ordered all this, who was way out there. That's the doctor that begins with a V. He's probably the one that perforated it. Respectfully, Your Honor. But that's the possibility that isn't answered. So, therefore, that says this case should go back. Respectfully, Your Honor, I think those are jury questions. And the evidence was sufficient for the jury to render a verdict in favor of the defense, to render that verdict on the basis of proximate cause. If there was sufficient evidence, perhaps a great deal of evidence to the jury, that doesn't make a difference to the jury's verdict here. So long as there was some evidence, something that would have enabled the jury, as Dr. Villasusa's testimony did, to say that even though Dr. Sublette may have breached the standard of care, and even though these damages are essentially unchallenged as elements of injury, that without the connection of proximate cause, and with Dr. Villasusa's testimony to establish that these injuries would have occurred regardless of whether Dr. Sublette complied with the plaintiff's version of the standard of care. You don't think he was covering his tail there? It doesn't matter whether he was or not, Your Honor. His testimony was evidence. Well, he wasn't sued, was he? And for the jury, he was not. Okay. And that is an issue for the jury, for the plaintiff to argue to the jury within the bounds of evidentiary rules. It's an issue for the jury to resolve on its own. I understand that Your Honor may feel very differently. This Court may feel ---- It's not so much I feel differently. It's the fact that you're saying woulda, shoulda, instead of based on proximate cause, which was established. And you left out coulda, Your Honor. No, coulda is yours. Coulda is mine. And it is what the jury ---- And that's not what the jury found. But we don't know for certain what the jury did find. All we can know, based on this record, is what the jury coulda found. And they coulda found, based on the evidence placed before them, that Dr. Sublette was negligent and that the plaintiff suffered injuries, but that she would have suffered those injuries regardless of what the defendant did. So we're right back where Judge Hogan was, and that's to the point that what you just said is the basis to send it back for a new trial. The point where we are and where Judge Hogan didn't reach was what reasonable hypothesis exists to support this verdict. Kleist says that it's a reasonable hypothesis to say this is a verdict for the defendant on the issue of proximate cause. And that is where Judge Hogan abuses discretion. And I think Kleist has wrongly decided. Kleist is consistent with Flynn, and it's consistent ---- Justice, but I have to say they're wrong. In any case, Your Honor, Kleist is consistent with Flynn. And if I might observe exactly what the Flynn court said ---- But that predates all the other cases. It did. But Flynn is still good law in holding that there is no inherent inconsistency in the verdict here. That was a verdict finding that defendant was negligent but awarding no damages, which finds defendant liable for having breached his legal duties toward plaintiffs but also finds that such breach of duty resulted in no pecuniary loss to plaintiff administrator. Pardon me. And the court concluded such verdict contains no basic error and in no way requires a new trial. Were there undisputed damages in that case? Because there's elements of the damages in this case that are disputed, like loss of society. Right. But there's damages that are clearly undisputed, like funeral costs and medical costs. Certainly. So it would be one thing if all we had here was a loss of society and the verdict was zero. Your argument would probably be a little different. But in this case ---- Well, I'm sorry, Flynn. So I have not read Flynn. I thought I read all the cases. Apparently I missed Flynn. Were there undisputed damages in that case? That's my recollection, Your Honor. It certainly involved the death of a two-week-old infant. I can't imagine that there was no dispute that there was loss claimed by the parties. And certainly when someone, as in this case, someone dies, there are funeral expenses. There's certainly no dispute about that, no way to challenge whether those expenses were in fact incurred, whether they're the legal responsibility of the defendant because they were approximately caused by his negligence. This is a different issue entirely. And because Flynn has held, has long held, never been overruled, that that sort of a verdict is consistent, internally consistent, and can be explained as internally inconsistent, it ought to be upheld. What district was Flynn from? It's a Supreme Court case, Your Honor. Oh, I'm sorry. It was the Supreme Court. I don't recall which. I thought you were saying it was another. No, it's the Supreme Court in 1968. Okay. So it's a venerable decision. It's old, but still good law. And more importantly, it is consistent with cases that have followed it, like the Kleist decision, like this Court's decision in Tedeschi and Chrysler, cases which recognize that the way a jury's verdict can be interpreted, if it's a reasonable hypothesis, and this is a reasonable hypothesis that we've put forth, consistent with Kleist, that the jury simply didn't find proximate cause, because the verdict can be interpreted that way in a way that respects what the jury did, it should be interpreted that way. That is not only consistent with the case law. It's consistent with our system of jurisprudence and the respect and the deference that we give to juries. I'd be happy to address any further questions if the Court has any. Otherwise, I would simply ask that the Court reverse the order granting a new trial and reinstate the verdict of the jury. Thank you. A little housekeeping, Your Honors. As I said before, my name is Bert Weinstein. I feel remiss in I did not introduce my client, Roseanne Brankin, who is sitting at the council table with me. Her brother, Salvatore Sam Cimino, could not make it due to the weather. But I guess their presence does show an abiding interest in this case. I heard, listened, and understood what Judge Smith, Justice Smith, said about focusing my attention on the post-trial motions. However, I think in order for this Court to understand what happened in this case, and I guess I'm the only witness to it right now, a little history is required. That's fine. I hope you don't mind. Go ahead. This is a case involving the decision to do a colonoscopy based upon the presentation of the client, the patient, the deceased in this case, Conchetta Cimino. Ms. Cimino came to the hospital after suffering abdominal pain, nausea, vomiting, coffee grind, emesis, or vomit. And she saw her internist, Dr. Villasoso, and they could not come up with a definitive diagnosis, which goes to prove once again that medicine is not a science until it gets to the litigation stage. It is an art, and it is a profession. So they called in several consultants. One of those was Dr. Sublette, and Dr. Sublette did a consultation. And I've attached that consultation to the appendix in my case because I think it's important for the Court to see what transpired in real time. They did a CT scan on Mrs. Cimino. When they did the CT scan, that's a noninvasive procedure. It's in the appendix at A3. And in the appendix in this consult report, the number one conclusion was extensive diverticulosis of the distal descending colon and sigmoid colon. Then at the end of the first conclusion, it talks about it cannot exclude an underlying partially, and that's a very, very important word in this context, partially obstructing colon mass early changes of acute diverticulitis. Diverticulosis is an outpouching of the colon. Diverticulitis is an infection or an inflammation. So they have evidence, medical evidence, that this patient presents with diverticulitis. And then Dr. Sublette, on the next page in the appendix, gives his consultation report. And in his history of present illness, he says that the patient has an elevated white count. A second clue, but actually an affirmation that this is diverticulitis or an infection. You have an elevated white blood cell count. And then at the bottom of his history, he says, it looks like it is probably from diverticular disease. And then he says, recommendation, colonoscopy and gastropathy will be done tomorrow, and she will likely get a hernia repair. Now, the defense has made a very interesting argument, that there is a differential diagnosis of a cancer, a mass or lesion. Now, a cancer is generally referred to as a tumor. A mass or a lesion could be a pimple. It's something that shouldn't be there, and those are generic terms. As soon as he saw and he concluded that it was probably from diverticular disease, he could not do a colonoscopy. That's what our case is about. It's not about did he perform the colonoscopy wrong. It's not about him doing the instrumentation in the wrong way. At that point in time, Mr. Cimino had what they call a hot colon. You don't touch it. You let it calm down. You wait two weeks. And they say that it was an emergent situation, that they had to determine if it was cancer or not. Well, I challenge anyone to find the word cancer in this consultation note. It doesn't exist. And I then cross-examined Dr. Sublett on this very issue. And I think it's instructive to understand. I included it actually in the brief at pages four and five. And I asked him, I'm not going to read the whole thing. You can do it at your leisure, a question. And you were not concerned at that time about it having a cancer. Isn't that true, doctor? No. I was concerned. Why didn't you write it down? He says documentation is not my best suit. Well, and my question then is, well, isn't it true, doctor, that if it's not written down, it didn't happen? Isn't that true in medical records? And the answer was, that's what the insurance company likes you to think, but I don't think that is necessarily how we think. And then I asked the question, but you're putting down your thoughts in a consultation report that's going to be relied upon by Dr. Mattis and Dr. Villasoso. Isn't that true? Answer, that's true. And the answer was, that's a valid point. How would they know that you were thinking, what you were thinking, if they didn't see what was written? And the answer was, that's a valid point. It's a defense that was. Counsel, I think there's no challenge in this appeal as to whether or not you proved a breach of duty. Okay, then I'll get to. But there is some question as to proximate cause. Do you believe. Let me ask you this. Do you believe that there was no evidence of no dispute as to proximate cause? I don't think there is any dispute that the jury found proximate cause. Now, that's a little slightly different answer. I think that proximate cause was proven, and I think that if you look. But do you think there was a reasonable theory that it was not proven? No. Mr. Howey argues that the jury listened to your expert, but also listened to the defendant's expert. He argues that evidence was presented both ways, that the jury put zero damages, and that the trial judge at that point had to take this verdict and see if he could reconcile it reasonably to say it was actually a defense verdict. And he said that if the judge could do that, he abuses discretion if he ordered a new trial. What would be your response to that? Well, my first response to that is that I believe that Judge Hogan was in error also. I think he should have given us a new trial on the issue of damages only, because I was so convinced that we proved proximate cause. Now, I tell you, this case is a mystery. It's like Mr. Howey, who is an appellate lawyer, and I'm just a trial lawyer. We were arguing two different cases here. Our briefs don't mesh, don't coincide, and they don't rebut one another, because we're arguing from two different points of view. I think in all these cases that I have read, especially Kleist, but all these cases I've read, as a trial lawyer, they don't discuss the instructions. They weren't even attached until I went to the instructions, and the instructions are very clear in this situation. And I'd like to go into them with you and explain. And I argued this in the post-trial motion, and then Judge Hogan, who was an excellent ‑‑ he's retired, was an excellent judge, and he gave us a really good trial, except he made a mistake in ordering a new trial on both issues. But he ‑‑ let me go to this issue of proximate cause that you're concerned with. The jury found for the plaintiff and against defendant, and therefore they signed verdict form A. Let me ask you a question. When I did Med-Mal and tort actions, I didn't submit two instructions. I submitted four. And I'm just ‑‑ I guess what you have done is you have limited proximate cause by only using the two, which does support your position, because the other two were not used, which could have been used. So I guess what I'm saying is you've honed in, and I don't know if they did cases in Med-Mal, but Terry Lavin and I also looked at this and said only two instructions were given. It's clear there's proximate cause. What happened after that, nobody knows. Well, I think you should listen to Justice Lavin. Who would be very ‑‑ whatever. I can't say what else he said. I understand. Let me explain. Counsel, what is your theory as to why did the jury award zero? I know we don't ‑‑ no one can know for sure, no special interrogatory, but what is your theory? I know what defendant's theory is. I don't think they liked me. That's my honest conclusion. I did something wrong in this case. I try to be a ‑‑ I try to get a juror to laugh. I try to be myself. And maybe I was overly cocky in this case. I don't ‑‑ it is mysterious to me how I didn't get damages awarded, except she was 83 years old. She was living alone independently. She was a feisty lady. She was an old Italian mama. And she had a life that was cut short. And I cannot think of any ‑‑ I can't think of any reasonable theory. And I'll tell you something ‑‑ What about the theory that there was no proximate cause? It's bologna sausage. Well, your position is there was proximate cause. His, I think, is more he wished ‑‑ his is a wish, but he's saying there is no proximate cause clearly. But he even has admitted there may be some cause, but the cause is not clear. This was a case that was fought on the issue of liability only. And that there was no deviation from the standard of care because it was medically required that Dr. Sublett had to go in and do a colonoscopy because of this fantastic cancer that they thought was present. Number one, that cancer was not present. Number two, the CT scan was also consistent with diverticulitis. And you don't do a colonoscopy. You failed to raise one additional thing. What? You failed to raise one additional thing that I support proximate cause. And that is that the doctors, maybe all, failed to do a second CT scan or an X‑ray when the person had 25,000 white blood cells. Right then and there, that's a red flag that you would go forward with this colonoscopy. I'm going to get to the proximate cause issue. And I don't understand why this panel is asking me this question. It says right here that the plaintiff claims that Cimino was injured and sustained damage and that the defendants were negligent. And the negligence was performing a colonoscopy at a time when she was experiencing acute diverticulitis attack. The plaintiff further claims that the negligence of the defendant was a proximate cause of her injuries and death. That means that the jury decided those elements existed. That's IPI number 2001. They said this is proximate cause and we're going to give the plaintiff a verdict. And that's it, if you look at it. And they had an opportunity on at least two different occasions, if you look at the instructions. And I think the instructions are key. The instructions aren't mentioned in this case by the defense counsel. The instructions in many of these cases don't go into it. The Price case is totally distinguishable from this particular fax. Why is that? It's because the judge made a mistake. I'll tell you where it is. In Price, the jury asked a question. They sent out a written question, quote, if we find someone negligent, do we have to have him pay a monetary amount? If so, what is the minimum amount and what is the max amount? And then after the lawyers got together to see this communication from the jury, the counsel agreed the question should be answered as follows. If we find someone negligent, do we have to pay him a monetary amount? No. That's where this mistake came about. This is almost like a special interrogatory, which is totally different than what the case we have here. And then it said you should construct the instructions because your questions are answered in those instructions. And if you look at the instructions, Your Honor, that 1201 says that there is proximate cause. And then if you look at the burden of proof instruction, the plaintiff has the burden of proving each of the following propositions asked to the defendant. First, the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions, and that in so acting or failing to act, the defendant was negligent. Second, that the plaintiff was injured. Third, that the negligence of the defendant was a proximate cause of the injury to the plaintiff. They told you. We find for the plaintiff the proximate cause of the injury as to theirs to the plaintiff. And they also were instructed if you decide for the defendant, you don't have to consider the question of damages. And so they knew what to do. And then the other thing in this case, which is different than most of the cases, and there is this presumption of, excuse me, some substantial pecuniary loss by reason of the death. And the Flynn case that you raised was talking about some pecuniary loss and this presumption. And that case was back in 1968. And I had been practicing for three years by that time. And I was well aware of that case. And that case was more about the presumption of pecuniary loss as opposed to these instructions. And I just want to mention also, I hope I've answered your questions about proximate cause and what the jury decided. And contrary to what counsel is trying to do, he's trying to rationalize an illogical and inconsistent verdict. And when this case was decided by the jury, Mr. Redman and I and Judge Hogan got up there. And my argument at the end of the trial, before briefing, before anything, I said this is an inconsistent verdict. It cannot stand. And some of the cases cited by the defendant in his brief are three cases, Theofanis, Tyndall, and Chrysler v. Darnell. In Tyndall, let me give you the citation here. We've got those. Okay. Well, I just want to point out the language. A new trial is appropriate when the damages awarded are manifestly inadequate. When you have $30,000 in medical and funeral expenses of $30,000 entered by stipulation and they give you zero, they are clearly inadequate. And it is clear two elements of damages have been ignored. They have ignored the medical expense and funeral expense. And three, the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. Those are the three elements that Tyndall talks about. Tyndall also reversed and remanded for a trial on both liability and damages, which I don't believe is true. Made a mistake there, too. That's my position, anyway. And it said the one part of the case was correctly decided, the other part was incorrectly decided. Well, you know, that's what I think, because in many of the cases what they talk about is that the damages and the negligence are intertwined. In other words, they're saying, well, if you have a motor vehicle accident and you've got damage, there's a question of comparative fault here. This case doesn't have comparative fault, so that the damages are succinct, they're separate, and they are separate from the liability. And this was a case fought on liability. Mr. Redman didn't even contest the damages. And that's why I think that it should be a trial only on the damages, because it was proven, if you look at the logical relevant instructions, it's obvious that the jury found for the plaintiff, and if they found for the plaintiff, they found proximate cause. I think you can say that as almost as an absolute, and you don't have to wonder about it. You don't have to, as counsel's opening brief says, divine what occurred here. It's just not in the cards. That's the Tyndall case. And then there's Chrysler v. Darnell, also cited by the defense, and they talk about the Giardino v. Ferkey case. And at the conclusion of this case, I forget who wrote the opinion, Justice Campbell, an award, I'm quoting, an award will be held to be inadequate where, in light of the plaintiff's proved medical expenses, pain and suffering, and disabilities, the jury could not have considered all these damage elements in arriving at its award. And we, therefore, that the trial court properly denied the motion for a new trial on the issue of damages only. But this is when there was a ‑‑ but he still took care of the case and held that the jury's verdict of slightly less than the amount of the uncontested special damage was inadequate. And Theophanis argues in a similar manner, defendants relying on Chrysler v. Casita, the jury returned the verdict in favor of the plaintiff's processional damage. And then the case is we hold that the irreconcilably inconsistent verdict requires reversal of the judgment in favor of Serafee on counts one and remand for retrial on liability, as well as damages, because the two of them were intertwined. But in this case, they're not intertwined. And my goodness, I had a thought I was going to say, and I think I just lost it. This is a situation where the defense has tried to create a defense where none really existed. And I'll tell you or suggest to you that even if Dr. Sublette performed the colonoscopy properly, and we didn't make an issue of that, but the reason you don't do a colonoscopy when you have a hot colon is the insertion, the invasive procedure, can cause a micro-perforation to become an actual perforation. A micro-perforation is when you don't have much of a hole, and then all of a sudden you insert the scope, and it causes the situation to become a tragedy. In this situation, that scope caused the peritonitis and sepsis in which she died from. I can't tell you why I'm here. I really am. I'm going to have to cut you short. I'm going to have to cut you short. I think you've made your points. Okay. I just want to say one more sentence. If the jury had awarded me $20,000 in medical and $10,000 in funeral, I probably wouldn't be here. But they gave us nothing. And that's what's inconsistent and different. Thank you very much for your time. And, counsel, be brave, because you were given about 35, 40 minutes. So you got about three minutes. I appreciate the court's indulgence, Your Honor. May it please the court. If the jury had given Mr. Weinstein's client $20,000 or $30,000 or the figures he threw out or anything at all, he's right. We wouldn't be here, because in that situation it wouldn't be possible to say that the jury might have found in favor of the defense on proximate cause. In that situation, there would be no way to reconcile the jury's verdict. But this is a different situation where we do have a case of a verdict that can be interpreted in a way that is internally consistent and consistent with cases like Flynn, like Kleiss. In fact, I'd like to take a moment to address Justice Ellis's question to the plaintiff's counsel and change it a bit, not the question, what is your theory as to why the jury awarded zero, but more relevantly, is there a reasonable hypothesis as to why the jury awarded zero? Counsel, that's not the question we want answered, and you've answered previously what we thought you think. So cut it short. We don't want to hear you go on forever now. We've heard what we want to hear, okay? I don't want to hear a new argument addressing not what he asked but something else. So you're going off on a tangent, and I'm not pleased with it. And I'll be very honest with you. I think both of you ought to settle this case. With respect, Your Honor, I think Justice Ellis's question, to the extent that I can answer it. Counsel, I'm cutting you off. That's it. May I continue my rebuttal, Your Honor? If it's not, it depends on what it is, Counsel. You've had almost an hour here. I appreciate the court's indulgence. And with that said, I will stand on the argument we have made. I would request that the court recognize the validity of the jury's verdict in this case and the way in which it can be and should be interpreted. And for those reasons, I would respectfully request that the court reverse the order granting a new trial and reinstate the verdict the jury returned. Thank you. Thank you. Again, I just wish to emphasize one thing. We should not have been here. This case should have been settled. And if after the opportunity to file a green brief, it's done and it passes and you still wish to settle it, one of us would be glad to talk to you. But my answer is this case should have been settled. It would be a waste of money to go back and retry it.